**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

ALAN P. WOODRUFF, DANIEL FENTON,
LIBERTARIAN PARTY OF NEW MEXICO,
GREEN PARTY OF NEW MEXICO, and
DONALD HILLIS,

           **Plaintiffs,**

vs.                                    **Civ. No.  09-449 JH/KBM**
                                          *consolidated with*

MARY HERRERA, in her official capacity     **Civ. No. 10-123 JH/KBM**
as New Mexico Secretary of State,          **Civ. No. 10-124 JH/KBM**

           **Defendant.**

<u>**MEMORANDUM OPINION AND ORDER**</u>

In this series of lawsuits, the Plaintiffs seek declarations that portions of the New Mexico

Elections Code are unconstitutional, as well as injunctive relief directing the Secretary of State to

qualify the Plaintiff political parties as "major" parties and to place the Plaintiff candidates on the

general election ballot.  The Plaintiffs filed their first lawsuit, *Alan P. Woodruff, Daniel Fenton,*

*Libertarian Party of New Mexico, Green Party of New Mexico, and Donald Hillis v. Mary Herrera*,

Civ. No. 09-449 JH/KBM (hereafter, *Woodruff I*), on May 7, 2009.  The complaint in *Woodruff I*

asserts fifteen separate causes of action, some meritorious, others bordering on frivolous.  Early in

that case, Plaintiffs moved for and were granted leave to amend their complaint.  They failed to do

so, however, instead choosing to file numerous and lengthy motions for summary judgment on all

their claims, as well as respond to the Defendant's motion to dismiss, all the while pressing the

Court to expedite its rulings.  This Court did so, investing considerable time and Court resources and

placing the case ahead of older cases on the Court's docket.  But just days before the Court issued

its detailed  rulings on most of the Plaintiffs' motions, the Plaintiffs again moved to amend their

complaint to add and alter claims, as well as to add parties.  The motion contained no explanation for Plaintiffs' failure to amend when granted leave to do so months earlier, nor did Plaintiffs explain why they filed their many motions for summary judgment and urged the Court to expedite its rulings on those motions, all while planning to amend their complaint in its entirety.  As set forth more fully in its February 1, 2010 Memorandum Opinion and Order [Doc. No. 124], the Court denied Plaintiffs' motion for leave to amend on grounds of both undue delay and unfair prejudice to the Defendant.

On February 11, 2010, in an apparent end-around the Court's denial of their motion for leave to amend, Plaintiffs filed two new lawsuits.  In *Alan P. Woodruff and Green Party v. Mary Herrera*, Civ. No. 10-123 JH/KBM (hereafter, 10cv123), two of the Plaintiffs from *Woodruff I* filed their complaint asserting the amended claims that they had been denied leave to file in *Woodruff I*.  In *Reform Party of New Mexico, La Raza Unida, and New Mexico Libertarian Party v. Herrera*, Civ. No. 10-124 JH/KBM (hereafter, 10cv124), Plaintiffs filed a third lawsuit.  The complaint is identical to that in 10cv123, except the Plaintiffs are those parties that the Plaintiffs in *Woodruff I* sought (and were denied) leave to add.[1]  Many of the clams in 10cv123 and 10cv124 are identical or very similar to those in *Woodruff I*, although unfortunately the Plaintiffs have chosen a different numbering system, such that the claims in the cases do no correspond by number.  Both cases have been

---

[1] Plaintiff Alan Woodruff represents both himself and the Green Party in *Woodruff I*, with Michael Keefe representing the remaining parties, including The Libertarian Party of New Mexico.  On the other hand, Alan Woodruff is sole counsel for all plaintiffs in 10cv123 and 10cv124, including New Mexico Libertarian Party.  On December 27, 2010, counsel for The Libertarian Party of New Mexico filed a notice informing the Court that the entity which is a plaintiff in 10cv124, New Mexico Libertarian Party, is a limited liability company formed by Alan Woodruff and is in no way affiliated with the National Libertarian Party.  Counsel further informed the Court that a New Mexico state district court has enjoined Woodruff from representing himself as a candidate of The Libertarian Party of New Mexico.

consolidated into *Woodruff I*.  Again, there has been significant motion practice, with Defendants

moving to dismiss 10cv123 and 10cv124 on grounds of, *inter alia*, res judicata.  Similarly, Plaintiffs

have once again filed numerous motions for summary judgment on their claims. Overall, it appears

to the Court that Plaintiffs' tactic in this litigation has been to attempt to overwhelm the Secretary

of State with claims and motions, with almost total disregard for efficiency or conservation of

judicial resources.

## DISCUSSION

I. **PLAINTIFF'S RENEWED MOTION FOR SUMMARY JUDGMENT ON COUNTS V AND VI OF CASE 1:09-CV-449 (Doc. No. 132) and PLAINTIFFS' MOTION FOR LEAVE TO FILE EXCESS PAGES (Doc. No. 134)**

Plaintiffs have filed an 81-page motion for summary judgment on Counts V and VI of their

complaint in *Woodruff I*, which correspond to Counts IV and V in 10cv123 and 10cv124.  In the

same motion, Plaintiffs also request summary judgment on Counts I-A and VIII in 10cv123 and

10cv124. The Local Rules provide that motions with supporting memoranda must be no longer than

27 pages in length, and thus Plaintiffs' motion is three times that limit.  Plaintiffs also filed a motion

for leave to exceed the page limit contemporaneously with their motion for summary judgment.  The

Secretary of State did not file a response in opposition to the motion to exceed page limit, though

that creates no obligation for the Court to grant the motion, as the Court has discretion regarding

when to permit extensions of page limits.

When the circumstances warrant, the Court is generous with requests for extensions of page

limits.  However, the present request is extraordinary—never before has any party asked this Court

for permission to file a motion for summary judgment of such length, particularly where, as here,

there are almost no facts in dispute.  This suggests that there may not be a true need for such a large

extension of the page limits.  A brief review of the motion itself [Doc. No. 132] bears out this

conclusion.  According to the Table of Contents, the first 32 pages of the motion are "summary," "introduction to the law of ballot access," and "general considerations regarding New Mexico's ballot access schema."  Only then do Plaintiffs finally begin to address any specific cause of action for which they are moving for summary judgment.  The Court questions how much of this copious introductory material is actually essential to Plaintiffs' motion.  Furthermore, the motion is rife with lengthy footnotes typed in print that is significantly smaller than the 12-point font required by our Local Rules.  In addition, Plaintiffs' motion is not double-spaced, as required by the Local Rules, but is perhaps 1.5 spaced.[2]  This is evident by the number of lines of text that Plaintiffs are able to squeeze onto a page, as compared to the Court and the Secretary of State, both of whom have used double spaced text in their documents.  These violations of the Local Rules indicate that if the Plaintiffs' motion were in compliance, it would be substantially longer than 81 pages–perhaps even more than 100 pages in length.

In accordance with the foregoing, Plaintiffs' motion for extension of page limit [Doc. No. 134] will be denied.  As a result, the Court will consider only the first 27 pages of the motion, which contain no argument or request for relief.  Therefore, Plaintiffs' motion for summary judgment [Doc. No. 132] will be denied as well, as the first 27 pages of the motion do not assert sufficient grounds for any relief.  However, the Court grants Plaintiffs leave to refile their motion for summary judgment as to Count V in *Woodruff I* only[3], provided that it meets <u>all</u> formatting requirements of

---

[2] The Court has noticed Plaintiffs' violations of the Local Rules governing font size and line spacing throughout this litigation.  Preferring to address the issues on their merits, until this point the Court has chosen to overlook those violations.  However, in consideration of the Plaintiffs' attempt to file such an egregiously long motion, the Court declines to overlook those violations any longer.

[3] Plaintiffs may not include in their revised motion for summary judgment any argument regarding Count VI in *Woodruff I* because the Court has already dismissed Count VI with

the Local Rules and provided the motion is no longer than 35 pages in length.

## II.   DEFENDANT'S FIRST MOTION TO DISMISS (filed as Doc. No. 6 in Civ. No. 10-124 JH/KBM)

In this motion, Defendant Mary Herrera[4] has filed a motion to dismiss the Complaint in *Reform Party of New Mexico, La Raza Unida, and New Mexico Libertarian Party v. Herrera*, Civ. No. 10-124 JH/KBM (hereafter, "10cv124").   Defendant's motion, filed as Doc. No. 6 in 10cv124, is based on the premise that all of the Plaintiffs' claims have already been raised and ruled upon by the Court in *Woodruff I*.   While the Secretary of State acknowledges that the doctrine of *res judicata* does not apply, as the plaintiffs in 10cv124 are entirely different than those in *Woodruff I*, she contends that the Court has already addressed the legal claims contained in the Complaint and therefore need not do so again.   The Secretary of State's motion to dismiss is grounded entirely on the theory that the Plaintiffs' claims, which are purely legal claims regarding the constitutionality of both the Election Code and the Secretary of State's actions, have already been adjudicated by this Court and need not be rehashed; she does not make any new legal arguments in her motion.

The Secretary of State's motion will be granted in part and denied in part.   The Court agrees that Counts II-B and II-C in 10cv124 are essentially the same as Counts III-B and III-C in *Woodruff I*, which the Court dismissed with prejudice in a Memorandum Opinion and Order entered

_____

prejudice.  *See* Doc. No. 103.  Plaintiffs may not include any argument regarding Count VIII in 10cv123 and 10cv124 because in Part VI of this Memorandum Opinion and Order, *infra*, the Court has denied Plaintiffs' motion for summary judgment on Count VIII.  Finally, Plaintiffs may not include argument regarding Count I-A in 10cv123 and 10cv124 because that claim is identical to Count II-C in *Woodruff I*, a claim that has been fully briefed and dismissed with prejudice in that case.

[4] As of January 1, 2011, Mary Herrera is no longer the Secretary of State.  Dianna J. Duran now holds that office.

December 8, 2009. *See* Doc. No. 103. For the same reasons set forth in that Memorandum Opinion and Order, the Court concludes that Counts II-B and II-C in 10cv124 should be dismissed with prejudice as well. Furthermore, the Court has previously dismissed with prejudice Count VI in *Woodruff I*. Plaintiffs in 10cv124 have reasserted that claim as Count V, though their basis for the claim is narrower. However, the same grounds upon which the Court previously dismissed that claim still apply, and therefore, based upon the reasoning set forth in its December 8, 2009 Memorandum Opinion and Order, the Court also will dismiss with prejudice Count V in 10cv124.

The Court will deny the Secretary of State's motion to dismiss in all other respects. Specifically, Counts VII and VIII in *Woodruff I*, which correspond to Counts VI and VII in 10cv124, were dismissed without prejudice. The Court will not, at least at this stage, dismiss these newly asserted claims based solely upon its previous rulings.[5]

In accordance with the foregoing, the Secretary of State's motion to dismiss with be granted in part, to wit: Counts II-B, II-C, and V in 10cv124 are dismissed with prejudice. The remainder of the motion to dismiss is denied.

## III.   DEFENDANTS' MOTION TO DISMISS CASE 10cv123 ON RES JUDICATA GROUNDS (Doc. No. 135)

Pursuant to the doctrine of res judicata "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Wilkes v. Wyo. Dep't of Employment Div. of Labor Standards*, 314 F.3d 501, 503-04 (10th Cir. 2002) (quotation omitted). "Under Tenth Circuit law, claim preclusion applies when three

---

[5] However, the Court rules upon Plaintiffs' Motion for Summary Judgment on Count VII (Doc. No. 161) in Part XI, *infra*.

elements exist: (1) a final judgment on the merits in an earlier action; (2) identity of parties or privies in the two suits; and (3) identity of the cause of action in both suits." *MACTEC Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005).

Plaintiff argues, and the Court agrees, that the elements of res judicata are not satisfied because there has not yet been a final judgment entered in *Woodruff I*.  Indeed, as discussed in Part I, supra, of this Memorandum Opinion and Order, Count V of *Woodruff I* remains pending. Accordingly, Defendant's motion to dismiss will be denied.


## IV.    PLAINTIFFS' MOTION FOR EX PARTE PRELIMINARY INJUNCTION RE: COUNT II-E IN CIV. NO. 10-123 JH/KBM (Doc. No. 130) and in CIV. NO. 10-124 JH/KBM (Doc. No. 8)

Plaintiffs have moved for an *ex parte* preliminary injunction on Count II-E of their Complaint in 10cv123.  Plaintiffs also filed their motion as Doc. No. 130 in *Woodruff I*, as well as Doc. No. 8 in  10cv124.  After reviewing the Complaints in 10cv123 and 10cv124, the Plaintiffs' motion, and the authorities filed by counsel, the Court concludes that the motion should be denied.

In Count II-E of their Complaint in 10cv123, Plaintiffs allege that the New Mexico Legislature has failed to set forth in the Election Code a specific deadline for minor parties to file qualifying petitions.[6]  They assert that the Secretary of State has no authority to impose a filing deadline not found in the statute, and that requiring parties to file their petitions on the date established by NMSA 1978, § 1-7-4 for filing party rules and regulations violates the Elections Clause found at Article 1, Section 4 of the United States Constitution.  The Complaint in 10cv123 asks the Court to declare the Secretary of State's actions unconstitutional and to enjoin the Secretary

---

[6] While Plaintiffs also dispute the requirement that they file qualifying petitions, for purposes of this motion they challenge only the filing deadline for such petitions.

from requiring the Green Party to file any qualifying petition whatsoever.  In their motion, Plaintiffs ask the Court to order the Secretary of State to recognize the Green Party as a qualified party in New Mexico.

This Court has previously set forth the legal standard for preliminary injunctions (*see* Doc. No. 204), and therefore incorporates that discussion herein.  As with Plaintiffs' previous motion for preliminary injunction, they seek a traditionally disfavored form of injunctive relief—specifically, relief that changes the status quo and that is mandatory in nature.  Accordingly, in order to prevail the Plaintiffs must meet the heavier burden described in *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975-76 (10th Cir. 2004) (en banc).  The Court concludes that the Plaintiffs cannot meet that burden.

In a Memorandum Opinion and Order entered on March 31, 2010, the Court stated that the Secretary of State must accept minor party petition signatures with either the signatory's residential address or his address as printed on his voter registration, but that otherwise Plaintiffs must satisfy all other petition requirements.  On October 12, 2010, the Tenth Circuit upheld that ruling.  *See Woodruff v. Herrera*, 623 F.3d 1103 (10th Cir. 2010). Thus, Plaintiffs' argument that they could not file petitions because they had no idea how to fill out the petition forms is without merit.  Further, Plaintiffs' motion fails because their requested relief—that the Court simply order the Secretary of State to place the Green Party on the ballot—is adverse to the public interest as it directly undermines the remaining ballot access procedures set forth by the Legislature and that are applicable to other parties.

Finally, for the same reasons set forth in this Court's prior Memorandum Opinions and Orders, it rejects Plaintiff's contention that the Secretary's decision to impose a filing deadline violates the Elections Clause.  Indeed, the Legislature has in fact set forth in the Election Code the

8

time, place and manner of federal elections as required by the Constitution.  In the face of the lack of an express deadline for filing minor party petitions in the Election Code, the Secretary of State has supplied such a deadline.  As before, the Court concludes that this does not usurp the constitutional authority of the Legislature to set the time, place and manner of federal elections. Thus, the Court will deny Plaintiffs' motion for the additional reason that they have failed to demonstrate a substantial likelihood of success on the merits.

## V.    PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION RE: COUNTS II-A AND III (Doc. No. 131)

In Count II-A, Plaintiffs allege that the Election Code's provision requiring minor party candidates to file petitions in order to be included on the general election ballot, Section 1-8-2, violates the Elections Clause of the United States Constitution.  Specifically, they allege that (1) the Secretary of State's petition form for minor party candidates, which is to be signed by "eligible electors" is inconsistent with the Election Code, which states that such petitions may only be signed by "voters"; (2) the Secretary of State's minor party candidate nominating petition form, which requires the candidate's party affiliation, is inconsistent with the statute, which imposes no such requirement; (3) the Secretary of State refuses to accept candidate petition signatures on a form identifying the candidate as the candidate of a party other than the party whose nomination he receives; (4) the Secretary of State's form requires signers of candidate nominating petitions to state their address on their voter registration form, a requirement not in the Election Code; and (5) the Secretary of State requires candidates to use her form, even though it is not consistent with the statute.

In Count III, which is extremely similar to Count II-A, Plaintiffs allege that the petition

requirements for both minor parties and minor party candidates are unconstitutionally vague. Specifically, they allege that (1) while Section 1-7-2(A) requires that signers of minor party qualifying petitions must be "voters," the Secretary of State's petition form for minor parties requires signatures of "eligible electors;" (2) the Secretary of State requires candidates to use her form, even though it is not consistent with the statute; (3) the Secretary of State's candidate petition form requires signers to state their address on their voter registration form, a requirement not found in Section 1-8-2(B) of the Election Code.

In their motion[7] for preliminary injunction on Counts II-A and III, Plaintiffs Woodruff and the Green Party of New Mexico ask the Court to enjoin the Secretary of State from enforcing the minor party and minor party candidate qualifying petition requirements in Sections 1-7-2(A) and 1-8-2(B), respectively.[8]  Plaintiffs' motion will be granted in part.

First, this Court has already entered summary judgment, including declaratory and injunctive relief, in favor of Plaintiff Green Party as to the inconsistent provisions of the Election Code regarding the addresses of voters who sign minor party qualifying petitions, and that decision has been upheld on appeal.  *See* Doc. Nos. 106, 151, 154, 186 and 212.  To the extent that Plaintiffs ask

---

[7] In addition to the formatting violations already discussed earlier in this Memorandum Opinion and Order, Plaintiffs' reply brief (Doc. No. 177) violates the Local Rules by being over the 12-page limit for replies.  Plaintiffs did not file a motion for extension of the page limit. Accordingly, the Court has considered only the first twelve pages of Plaintiffs' reply brief.

[8] In their motion, Plaintiffs ask the Court to enter preliminary injunction on the grounds that Section 1-8-2(E) unconstitutionally limits voters to signing only one petition for any candidate for a single office in the same election, and that the Secretary of State's candidate petition form impermissibly requires signers to represent that they have not and will not sign the petition of any other candidate for the same office in the same election.  The Court has scoured Counts II-A and III of Plaintiffs' Complaint and cannot find any hint of this claim.  Once again, the Court is left with no choice but to deny Plaintiffs' request for relief on a claim that they have not pled.

for that same relief again, their motion is moot.  However, the Election Code contains the same inconsistent provisions regarding the addresses of voters who sign minor party *candidate* nominating petitions, and therefore those provisions pose the same problems in terms of vagueness of the statute.  The Court's current Amended Partial Final Judgment does not address the issue of candidate nominating petitions.  However, in her response brief, the Secretary of State seems to assume that the issue already has been decided formally as to the candidate petitions, and that is the only opposition she raises on this issue.  Thus, the Court concludes that it should amend its partial final judgment in favor of Plaintiffs to expressly state that the Secretary of State must accept signatures on minor party *candidate* petition forms that are accompanied by the signer's address as registered or his residential address.[9]

Second, the Election Code provides that persons signing the nominating petitions required for minor parties and minor party candidates declare that they are "voters of New Mexico."  *See* NMSA 1978, § 1-7-2(A) (emphasis added).  Similarly, Section 1-8-2(B) of the Election Code provides that minor party candidates must file "a petition containing a list of signatures and addresses of voters. . ." (emphasis added).  However, the Secretary of State requires minor parties and minor party candidates to use a form of petition in which signatories must verify that they are "qualified electors" of a particular New Mexico county, and thus varies from the language of Section 1-7-2(A). The terms "voter" and "qualified elector" are both defined in the Election Code.  A "qualified elector" is "any person who is qualified to vote under the provisions of the constitution

---

[9] One typically would not enter partial final judgment as a form of relief on a motion for preliminary injunction.  However, because the legal issue is identical to one that has already been decided conclusively, and because the Secretary of State herself is treating it as such, the Court concludes that modifying its Partial Final Judgment is appropriate under the circumstances.

of New Mexico and the constitution of the United States," NMSA 1978 § 1-1-4, while as previously stated above, a "voter" is "any qualified elector who is registered under the provisions of the Election Code." *Id*. at § 1-1-5. Thus, one may be a qualified elector without being a voter. Further complicating matters is Section 1-4-2, which provides that "Any person who *will be* a qualified elector at the date of the next ensuing election shall be permitted . . . to register and become a voter." (emphasis added). Thus, one may be a qualified elector without being a "voter," and one may register to vote without yet becoming a qualified elector, but in order to be a "voter" as defined by the Election Code, one must be both a qualified elector and registered to vote.

The Court agrees with the Plaintiffs that the Election Code draws a distinction between voters and qualified electors, and that it clearly provides that only voters may sign qualifying petitions for minor political parties and nominating petitions for their candidates. The Court also agrees with Plaintiffs that by stating they must be signed by qualified electors, not voters, the Secretary of State's petition forms for minor parties and their candidates are at odds with the Election Code. It is undisputed that the Secretary of State has no authority to promulgate petition forms that are at odds with the statute or that, despite this, she requires minor parties and their candidates to use only her forms of petition. Thus, the Court agrees that Plaintiffs have shown a likelihood of success on the merits, one of the requirements for a preliminary injunction.[10]

However, the Court does not believe Plaintiffs have demonstrated that they will suffer irreparable harm if a preliminary injunction does not issue. Plaintiffs argue that minor parties and their candidates run the risk of obtaining signatures from qualified electors who are not voters, as

---

[10] The Secretary of State has not argued two of the elements for preliminary injunction, that an injunction would be adverse to the public interest or that the threatened injury to the Plaintiffs is not outweighed by the damage to the Secretary of State. Therefore, the Court does not discuss those elements here.

those terms are defined in the statute, and therefore having those signatures vulnerable to a court challenge that could undermine the validity of their petitions. But as the Secretary of State correctly pointed out, Plaintiffs can easily avoid this risk by ensuring that those who sign their petitions are voters under the statute—that is, that they are qualified electors who are registered to vote in New Mexico. Plaintiffs are clearly aware that this is what the Election Code demands, and such signatures would be beyond challenge by either the Secretary of State or any third party. The fact that the Secretary of State's form would ostensibly and improperly enlarge the pool of persons eligible to sign Plaintiffs' petitions does not cause them irreparable harm, when they are aware of that fact and it is easily within their power to comply with the statute. The injunctive relief that Plaintiffs request–that their names be placed on the ballot–is also inappropriate. Thus, the Plaintiffs' motion for preliminary injunction regarding the Secretary of State's requirement that petitions be signed by qualified electors rather than voters will be denied. The merits of the claim, however, and Plaintiffs' request for declaratory relief remain pending.

Plaintiffs' motion is therefore denied in part and granted in part.

## VI.    PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION RE: COUNT VIII IN 10cv123 (DOC. NO. 138) AND PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNT VIII (DOC. NO. 162)

In Count VIII of the Complaint in 10cv123, Plaintiffs Alan Woodruff and the Green Party of New Mexico allege that NMSA 1978, § 1-8-45 requires that, in order to run as an independent candidate, the candidate's voter registration must not contain a designation of party affiliation, and that this provision denies candidates the right to engage in political speech by declaring their support for the positions and philosophies of the parties they identify on their voter registration. Plaintiffs further allege that the State of New Mexico has no interest in denying ballot access to candidates

13

who identify on their voter registration a preference for a political party that has no organizational structure in New Mexico, or which has otherwise failed to qualify as a political party under the Election Code. They contend that the State of New Mexico has no interest in denying candidates whose parties do not qualify for ballot access the right to instead run as independent candidates. In terms of relief, Plaintiffs ask the Court to declare that § 1-8-45 unconstitutionally impairs the rights of all candidates having a voter registration affiliation with a party that does not qualify for ballot access.

There are two pending motions regarding Count VIII of the Complaint in 10cv123.[11] The first is a motion for preliminary and permanent injunction (Doc. No. 138) brought by both Alan Woodruff and the Green Party of New Mexico to bar the Secretary of State from enforcing NMSA 1978, § 1-8-2(D) and § 1-8-18(A) of the Election Code because they are unconstitutional. Plaintiffs' motion does not mention § 1-8-45, which is the only section of the Election Code discussed in Count VIII and the only provision that Plaintiffs ask the Court to declare unconstitutional in Count VIII. Thus, there is a complete disconnect between the motion and Count VIII of the Complaint, and certainly Count VIII gave the Secretary of State no notice that Plaintiffs would be seeking injunctive relief regarding § 1-8-2(D) and § 1-8-18(A). Accordingly, the motion (Doc. No. 138) will be denied.

The second motion regarding Count VIII is a motion for summary judgment by Alan Woodruff only (Doc. No. 162). He asks the Court to enter declaratory judgment that together § 1-8-

---

[11] The Plaintiffs have forced the Court to infer that their motions refer to Count VIII in 10cv123, and not one of the other consolidated cases. In making that inference, the Court has relied upon the fact that the captions on both motions are identical to that on the Complaint in 10cv123, and Plaintiffs put that case number as the leading number on the captions of their motions. Furthermore, with regard to their motion for preliminary and permanent injunction, on the docket text Plaintiffs described the motion as relating to 10cv123.

2(D) and § 1-8-45 unconstitutionally impair his right of access to the ballot and to order the Secretary of State to include Woodruff on the ballot as a candidate for the U.S. House of Representatives.  In his motion and reply brief, Woodruff argues that under §§ 1-8-2(D) and 1-8-18(A), in order to be the nominee of either a minor or major party, a candidate must demonstrate by his voter registration that he is affiliated with that party on the date of the Governor's proclamation.  Furthermore, a candidate cannot be the nominee of any party unless that party has independently qualified for ballot access by satisfying the petition signature requirements of § 1-7-2(A) of the Election Code, and the qualifying petitions for minor parties are due on the first Tuesday of April.  Woodruff's argument therefore boils down to this:

> The filing date for minor party "qualifying" petitions is more than two months after the date a candidate must be registered as a member of the party whose nomination he seeks.  But if the party with which the candidate is registered on the date of the Governor's proclamation does not "qualify," he cannot be a candidate *at all* because he is barred, by NMSA § 1-8-45(A), from being an "Independent" candidate.  Therefore, candidates must decide, before the date of the Governor's proclamation, whether to register to vote *with no party affiliation*, and be an Independent candidate, or register *as a voter of a minor party*, and risk being denied any opportunity to be a candidate if his party does not "qualify" for ballot access.  This requirement imposes an unjustifiable burden on candidates.

Doc. No. 162 at 2 (emphasis in original).  In Woodruff's case, he states that on the date of the Governor's proclamation, he was registered to vote as a member of the Green Party, which had been disqualified after the last election and did not meet the petition requirements of § 1-7-2(A) for qualifying as a minor political party for the November 2010 election.  Therefore, Woodruff cannot appear on the general election ballot as a candidate of the Green Party, nor can he be an independent candidate. Consequently, Woodruff suggests that the Court should order the Secretary of State to place his name on the ballot for U.S. Representative.

15

The Court disagrees with Woodruff for two alternate reasons.  The first reason is substantive. As this Court has held on prior occasions, the Election Code's procedures for qualification of parties and for ballot access for individual candidates, including petition signature requirements, are not unconstitutional (beyond the voter registration requirement for candidates or the vague requirements regarding a petition signer's address), nor do they violate due process by imposing undue burdens upon minor parties.  Woodruff's claim in Count VIII should be analyzed through the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).  *Anderson* dealt with a due process claim, and there is widespread recognition that the *Anderson* test is appropriate for both First and Fourteenth Amendment challenges to state election laws.  *See, e.g., Crawford v. Marion County Election Board*, 553 U.S. 181, 128 S. Ct. 1610, 1616 (2008).  Specifically, a court

> must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id*.

The burden that Woodruff identifies here is the choice that a candidate must make before the date of the Governor's proclamation, if that candidate is a member[12] of a party that is not qualified.[13]

---

[12] The Court has held that the Secretary of State may not require a candidate to be registered to vote or to prove party affiliation through voter registration.  Thus, it is not clear to the Court at this time the manner or the extent to which §§ 1-8-2(D) and 1-8-18(A) will be enforced in the future.  However, that question is not currently before the Court.

[13] Under § 1-7-2, a candidate will know very shortly after the last general election whether or not his party has retained its qualified status based upon its candidates' performance in that election.

16

The candidate may continue to be a member of that party, but if so, he risks being barred from the ballot if his party fails to obtain the required petition signatures to become a qualified political party. On the other hand, he can disassociate himself from all political parties and run as an independent candidate instead. Woodruff argues that this choice imposes an unfair burden on candidates who are not members of major parties, in that they cannot possibly know in January, at the date of the proclamation, whether their parties will obtain the required petition signatures by the April deadline. Woodruff contends that this impairs his right to ballot access. The Court acknowledges that this does impose some burden on candidates who are affiliated with minor parties that are not qualified as of the date of the Governor's proclamation, as they must decide at that point whether to risk running as a member of that party (and perhaps being denied access to the ballot if their party does not qualify at a later time), or to abandon party affiliation and simply run as an independent.

Weighed against this, the Secretary of State argues that in order to ensure orderly elections, the State has an interest in preventing candidates from having two separate opportunities to get on the general election ballot. For example, major party candidates who lose in the primary election cannot then become independents in order to get their names on the general election ballot. Similarly, candidates of minor parties who fail to secure their party's nomination cannot then become independents in order to run in the general election. In the same vein, candidates who are members of non-qualified minor parties who choose to pursue candidacy as members of those parties cannot later become independents when their first attempt to get on the ballot fails as a result of their party's failure to achieve qualified status. To that extent, this is a burden that all candidates must bear: that their initial attempt to gain access to the general election ballot as a representative of a party may not bear fruit. The Court concludes that this burden is necessary to avoid the confusion that would arise if candidates that were initially identified with a political party at the

17

primary stage were suddenly allowed to reenter the race as independents.  Thus the plaintiff's motion should be denied.

The Court will deny Plaintiffs' motion for summary judgment on alternative, procedural grounds.  As the Secretary of State has correctly pointed out, Woodruff argues and moves for summary judgment on different grounds than those he pled in Count VIII of his Complaint in 10cv123.  In that claim, Plaintiffs did not plead the contention set forth in Woodruff's motion that the interplay of Sections 1-8-2(D) and 1-8-45 of the Election Code unfairly forces a candidate to choose, before the Governor's proclamation, whether to run as a member of a minor party or to run as an independent candidate.  Instead, Plaintiffs pled a similar, but slightly different cause of action based upon Section 1-8-45 alone.  As pled, Plaintiffs' claim is that Section 1-8-45, standing alone, is unconstitutional because a candidate whose party fails to qualify for an election cycle cannot gain access to the ballot as an independent candidate.  It would be improper to grant summary judgment to Woodruff on a claim that he has not pled, and of which the Secretary of State received no prior notice.  For this additional reason, the Court will deny Woodruff's motion.

Accordingly, Plaintiffs' motion for summary judgment on Count VIII (Doc. No. 162) will be denied.


## VII.  PLAINTIFFS' EMERGENCY MOTION FOR EX PARTE INJUNCTION AND SUMMARY JUDGMENT ON COUNT VI (Doc. No. 160)

In Count VI of their Complaints in 10cv123 and 10cv124, Plaintiffs allege that Section 1-8-2(B) of the Election Code is unconstitutional.  That section provides that minor parties must provide the names of their candidates, along with those candidates' nominating petition signatures, "on the twenty-first day following the primary election in the year of the general election."  According to

Plaintiffs, the requirement that minor parties and candidates file their papers on one day only is unconstitutional, although Plaintiffs do not allege what constitutional right (due process, equal protection, free speech, freedom of association, etc.) it allegedly violates. Plaintiffs asserted this same claim in *Woodruff I*, where it was labeled Count VII. In a Memorandum Opinion and Order entered December 8, 2009, the Court dismissed the claim without prejudice, noting that Plaintiffs had failed to plead it adequately, thereby making it impossible to analyze the constitutional arguments Plaintiffs were making. Now, Plaintiffs have attempted to revive the claim. Despite the fact that they still have not identified the constitutional right that they believe Section 1-8-2(B) violates, they now ask the Court to enter either a temporary or permanent injunction ordering th e Secretary of State to place their names on the general election ballot as a remedy . (This, despite the fact that there is no indication that Plaintiffs would be unable to file their papers on the date imposed by statute.) Alternatively, they request entry of summary judgment in their favor, including not only the foregoing injunctive relief, but also declaratory relief holding Section 1-8-2(B) to be unconstitutional. The Court will deny the motion in its entirety.

Plaintiffs have failed to show that they are entitled to injunctive relief. As the Court has previously observed, a mandatory preliminary injunction—one which requires the nonmoving party to take affirmative action—is "an extraordinary remedy" and is generally disfavored. *Little v Jones*, 607 F.3d 1245, 1251 (10th Cir. 2009). Accordingly, in order to prevail "the movant must make a heightened showing of the four factors." *Id*. For our purposes here, two of those factors are particularly relevant: 1) a likelihood of success on the merits; and (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief. With regard to the latter, Plaintiffs have utterly failed to show irreparable harm. They contend that it is unreasonable to designate only one day for minor parties and their candidates to file papers, because certain events—a natural

disaster, an accident, or a special declaration of a holiday that closes the Secretary of State's office on that day—might prevent such filings.  As Plaintiffs have failed to come forward with any evidence that any of this is likely to happen, it is purely speculative and therefore does not satisfy Plaintiffs' burden to prove irreparable harm.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).  Plaintiffs also claim that their legal challenges to the Election Code have created uncertainty regarding their filing obligations under the statute, thereby making it impossible for them to file papers on the required date and subjecting them to irreparable harm.  This Court disagrees—there mere fact that a party has raised a constitutional challenge to the Election Code does not mean that the Code's provisions and requirements do not apply to that party while the challenge is pending.  And, as the Tenth Circuit pointed out, this Court's rulings on Plaintiffs' claims neither relieved Plaintiffs from their obligations under the Election Code nor rendered those obligations uncertain.  *Woodruff v. Herrera*, 623 F.3d 1103 (10th Cir. 2010).

In addition, Plaintiffs have failed to demonstrate that they are entitled to prevail on the merits of their claim—a fact that requires denial of their request for both preliminary injunctive relief and final summary judgment.  Aside from their failure to properly plead the claim, as discussed above, Plaintiffs have also failed to come forward with any authority whatsoever in support of their claim that requiring minor parties and their candidates to file papers on one specific day imposes an unconstitutional burden upon them.[14]  On the record currently before the Court, in which Plaintiffs have asserted only a speculative harm and have come forward with no authority in support of their argument that the one day filing period burdens their Constitution rights, Plaintiffs are not entitled

---

[14] Indeed, the Court wonders what minimum period of time allotted for filing papers Plaintiffs would consider sufficient under the Constitution.  Plaintiffs do not address this question.

to summary judgment.  Accordingly, the Court will deny the motion in its entirety.

## VIII.   PLAINTIFF DANIEL FENTON'S MOTION TO COMPEL COMPLIANCE WITH COURT ORDER AND FOR SANCTIONS (Doc. No. 194) and DEFENDANT'S MOTION FOR LEAVE TO FILE SURREPLY (Doc. No. 197)

Plaintiff Daniel Fenton has moved this Court to enter an order compelling the Secretary of State to accept his filings as a candidate for U.S. Representative from New Mexico's Congressional District 2.  It is undisputed that while Fenton attempted, through his attorney Alan Woodruff, to file a "Declaration of Independent Candidacy" with the Secretary of State, he also did not file any signed nominating petitions in support of his candidacy.

In a Memorandum Opinion and Order entered on March 31, 2010 [Doc. No. 151], this Court addressed Fenton's request that it order the Secretary of State to place his name on the ballot as a candidate for U.S. Representative, regardless of whether he had met any of the other requirements for candidates set forth in the Election Code.   In denying Fenton's request, the Court held that while the Secretary of State could not require Fenton to prove, through voter registration, his membership in any party or his status as an independent, that fact did not preclude her from requiring Fenton to satisfy all other candidate requirements described in the Election Code, such as filing a Declaration of Candidacy form and nominating petitions with the requisite number of signatures.   After this Court certified its ruling for interlocutory appeal under Rule 54(b) [*see* Doc. No. 185], the Tenth Circuit affirmed the Court's order, refused to relieve Fenton of the other requirements of the Election Code, and declined to order the Secretary of State to place Fenton on the ballot.  *Woodruff v. Herrera*, 623 F.3d 1103, 1110-11 (10th Cir. 2010).

Now, in his present Motion to Compel Compliance with Court Order and for Sanctions (Doc. No. 194), Fenton asks the Court to compel the Secretary of State to place him on the ballot despite

his failure to file nominating petitions.  His motion was rendered moot by the Tenth Circuit's ruling, and therefore will be denied.

Similarly, Defendant's motion for leave to file a surreply (Doc. No. 197) to Fenton's motion is similarly moot and will be denied as such.


## IX.    PLAINTIFF'S EMERGENCY MOTION FOR PERMANENT INJUNCTION (Doc. No. 137)

In this motion, Plaintiffs ask the Court for entry of final judgment on Counts II-A, II-B, and IV of their Complaint in Woodruff I.  However, the motion is moot because the Court has already entered final judgment on these claims.  See Doc. Nos. 151, 154, and 185.  Furthermore, on appeal the Tenth Circuit Court of Appeals has upheld the declaration and injunction issued by this Court. *Woodruff v. Herrera*, 623 F.3d 1103 (10th Cir. 2010).    Accordingly, the relief requested by Plaintiffs in the motion has already been granted in part and denied in part.  The motion is denied as moot.


## X.    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNT II-D (Doc. No. 159)

In this motion, Plaintiffs ask yet again for summary judgment on their claim in Count II-D (corresponding to Count III-D in *Woodruff I*) that permitting straight party voting for major party candidates, but not minor party candidates, violates minor parties' constitutional rights to equal protection as well as the Elections Clause.  They further allege that identifying major party candidates on the ballot by party affiliation is unconstitutional, when neither independent candidates nor members of unqualified minor parties are similarly identified.  This is the same claim that Plaintiffs raised in *Woodruff I*, and Plaintiffs make the same arguments in favor of summary

judgment here.  Similarly, the Court will deny Plaintiffs' motion for the same reasons the Court denied their motion in *Woodruff I*.  The Court will not repeat its analysis here.  Rather, the Court's reasoning can be found in the Court's Memorandum Opinions and Orders entered December 11, 2009 (Doc. No. 106), February 1, 2010 (Doc. No. 124), and September 22, 2010 (Doc. No. 202). Plaintiffs' motion will be denied.

## XI.    PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNT VII (Doc. No. 161)

In Count VII of their Complaint in 10cv123 and 10cv124, Plaintiffs allege that Sections 1-8-18(A) and 1-8-2(D) of the Election Code on the grounds that they impair the rights of minor political parties and minor party candidates.[15]  Section 1-8-18(A) provides:

> No person shall become a candidate for nomination by a political party or have his name printed on the primary election ballot unless his record of voter registration shows: (1) his affiliation with that political party on the date of the governor's proclamation for the primary election; and (2) his residence in the district of the office for which he is a candidate on the date of the governor's proclamation for the primary election or in the case of a person seeking the office of . . . United States representative, his residence within New Mexico on the date of the governor's proclamation or the primary election.

Similarly, Section 1-8-2(D) provides that "Persons certified as nominees shall be members of that party before the day the governor issues the primary election proclamation."  The governor's proclamation occurs in late January, while primary elections take place in early June.  *See* NMSA 1978, Sections 1-8-11 and 1-8-12.

Plaintiffs allege, and the Secretary of State admits, that these sections preclude a person who is a non-resident of New Mexico, or a resident who is a non-voter, at the time of the proclamation

---

[15] Plaintiffs alleged this same claim as Count VIII in *Woodruff I*, where it was dismissed without prejudice.  *See* Doc. No. 103.

from being the nominee of a political party for the office of U.S. representative.  Similarly, these provisions preclude political parties from nominating otherwise qualified candidates who are not registered voters, a practice already held by this Court to be invalid.  Finally, these portions of the Election Code require political parties to nominate only candidates who are identified on their voter registration as members of that party.

The Court concludes that the motion for summary judgment should be granted.  As written, Section 1-8-18(A) requires that one must be registered to vote in New Mexico in order to be nominated as a candidate of a political party or to have one's name printed on the primary election ballot–it provides for no other mechanism for demonstrating one's party affiliation or residency. Thus, as the Court has previously explained, under Tenth Circuit law such provisions violate the Qualifications Clause by effectively making voter registration a requirement for candidacy. *Campbell v. Davidson*, 233 F.3d 1229 (10th Cir. 2000).  *See* Doc. No. 106.

Together, Sections 1-8-18(A) and 1-8-2(D) also violate the First Amendment rights of parties to free association by restricting their right to nominate as candidates persons of their choosing. Instead, under these provisions, political parties may only nominate individuals who are registered members of the party.  The Supreme Court has indicated that this is unconstitutional.  In *Tashjian v. Republican Party of Conn.*, 479 U.S. 208 (1986), a Connecticut statute required voters in any political party primary to be registered members of that party. However, the Republican Party of Connecticut adopted a rule that permitted independent voters to vote in Republican primaries for federal and statewide offices.  In addition, the Party brought an action in Federal District Court challenging the constitutionality of the Connecticut statute on the ground that it deprived the Party of its right under the First and Fourteenth Amendments to enter into political association with individuals of its own choosing.  The Supreme Court agreed, concluding that by forcing parties to

24

exclude non-members from their primaries, the Connecticut statute impermissibly burdened the free

association rights, including the right to partisan political organization, of the Party and its members.

Although the issue in *Tashjian* was a party's right to allow non-members to vote in its primary, the

Supreme Court had this to say about a party's right to nominate a non-member to represent it in an

election:

> Were the State to restrict by statute financial support of the Party's
> candidates to Party members, or to provide that only Party members
> might be selected as the Party's chosen nominees for public office,
> such a prohibition of potential association with nonmembers would
> clearly infringe upon the rights of the Party's members under the
> First Amendment to organize with like-minded citizens in support of
> common political goals.

*Id*. at 215.  Thus, the Supreme Court was unequivocal in stating that states may not prevent parties

from nominating non-members for public office.  Similarly, in *Eu v. San Francisco County*

*Democratic Central Comm.*, 489 U.S. 214, 223-24 (1989), the Supreme Court struck down a

California statute prohibiting political parties from endorsing and opposing candidates in the

primaries.  The Court reasoned that by preventing a party's governing body from stating whether

a candidate adheres to the party's tenets or whether party officials believe that the candidate is

qualified for the position sought, the ban directly hampered the party's ability to spread its message

and hamstrung voters seeking to inform themselves about the candidates and issues.  As a result, it

burdened the core right to free political speech of the party and its members. The ban also infringed

upon a party's protected freedom of association rights to identify the people who constitute the

association and to select a standard-bearer who best represents the party's ideology and preferences,

by preventing the party from promoting candidates at the crucial primary election juncture.  Finally,

the Supreme Court concluded that the ban did not serve a compelling governmental interest.

In light of *Tashjian* and *Eu*, the Court concludes that  Sections 1-8-18(A) and 1-8-2(D)

violate the qualifications clause as well as the First Amendment right of free association.  The Secretary state not only has failed to distinguish these authorities, but she also has failed to come forward with a compelling state interest to justify the burden that these provisions impose on the free association rights of political parties.  Accordingly, Plaintiffs' motion for summary judgment on Count VII should be granted and declaratory judgment entered in their favor.


## XII.   DEFENDANTS' MOTION TO CONSOLIDATE (Doc. No. 199 in 09cv449 and Doc. No. 3 in 10cv686)

On June 30, 2010, Plaintiffs Alan Woodruff, Terry Mulcahy, Craig Harris, Donald Hillis, Michal Mudd, and the Green Party of New Mexico filed a complaint in Second Judicial District Court, Bernalillo County, New Mexico against three Defendants: Secretary of State Mary Herrera, Director of the Bureau of Elections Don Francisco Trujillo, and Attorney General Gary King. Plaintiffs allege two causes of action.  In Count I, they contend that on June 22, 2010, Defendants Herrera and Trujillo refused to accept Plaintiffs Woodruff's and Mulcahy's qualifying papers as Green Party candidates for office (U.S. Representative and Secretary of State, respectively) in the 2010 general election on the grounds that the Green Party is not a qualified party under the New Mexico Election Code.  They further allege that the Defendants refused to accept petitions that would have qualified the Green Party.  Plaintiffs allege that Herrera and Trujillo should have accepted their qualifying papers because the Election Code does not authorize the Secretary of State to refuse to accept such papers,  that Trujillo acted outside the scope of duties of his office, and that both he and Herrera acted maliciously and with intent to advance the personal political objectives of Herrera and the Democratic Party.  They claim that these actions violated their constitutional rights and entitle them to money damages.  In Count II, which they style as a class action, Plaintiffs

allege that Herrera has conspired with King and other counsel in the Attorney General's office to "avoid judicial determinations of the constitutionality of provisions of the Election Code and the Green Party's right of ballot access," and to misapply the New Mexico Election Code to frustrate ballot access for minor parties and their candidates. They further claim that Defendants have employed unspecified "procedural tactics to prevent the courts from ever considering constitutional challenges to the ballot access provisions of the Election Code." Plaintiffs also assert a litany of alleged misdeeds committed by Herrera with regard to the Election Code and New Mexico campaign finance laws. These actions, they claim, have injured all registered voters in the State, of whom they allege Plaintiffs Hillis, Harris, and Mudd are representative for purposes of a class action.

On July 20, 2010, the Defendants removed the case to this United States District Court. The case was assigned to United States District Judge James Browning and given the number Civ. No. 10-686. The Defendants then filed a motion in 10cv686 (Doc. No. 3) to consolidate that case with *Woodruff I* and the other member cases. Defendants also filed the same motion to consolidate in *Woodruff I* (Doc. No. 199). On September 8, 2010, Judge Browning entered an Order in 10cv686, in which he granted the motion in part, transferring that case to the undersigned United States District Judge based on her familiarity with *Woodruff I* and its member cases. The issue of whether to consolidate 10cv686 into *Woodruff I* remains pending before this Court.

In considering a motion to consolidate actions, a court should initially consider whether the two cases involve a common question of law or fact. *See Servants of the Paraclete v. Great Am. Ins. Co.*, 866 F. Supp.1560, 1572 (D.N.M. 1994) (Burciaga, J.). If there is a common question, Judge Burciaga held, the court should weigh the interests of judicial convenience in consolidating the cases against the delay, confusion, and prejudice that consolidation might cause. *See id. See also Huene*

27

*v. United States*, 743 F.2d 703, 704 (9th Cir. 1984)(a court considering consolidation "weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause."); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2nd Cir. 1990) (stating that some factors to consider include whether the specific risks of prejudice and possible confusion are overcome by the risk of inconsistent adjudications of common factual and legal issues, the burden on parties, witnesses, and available judicial resources posed by multiple lawsuits, the length of time required to conclude multiple suits as against a single one, and the relative expense of all concerned of the single-trial, multiple-trial alternatives).

In this case, the Court concludes that the motions to consolidate should be denied. First, while portions of 10cv686 may be rendered moot by the outcome of *Woodruff I* and its member cases, by and large the two cases do not involve common questions of law and fact. *Woodruff I* involves, for the most part, purely legal challenges to the constitutionality of select portions of the Election Code; there are very few facts in dispute, and the Plaintiffs have asked for injunctive and declaratory relief ordering the Secretary of State to place them on the ballot. In contrast, in 10cv686, the Plaintiffs are challenging not the constitutionality of the Election Code, but rather the actions taken by the Defendants. This raises a plethora of factual questions. Additionally, the Plaintiffs in 10cv686 are requesting money damages. Second, the differences in the parties involved in the cases highlights the fundamental differences between them. Whereas in *Woodruff I* and all its member cases, Plaintiffs sued the Secretary of State in her official capacity, in 10cv686 Plaintiffs are suing the Defendants in both their individual and official capacities. Thus, while Mary Herrera is no longer a party to *Woodruff I*, she is a Defendant in 10cv686 in her individual capacity, alongside current Secretary of State Dianna Duran in her official capacity. Furthermore, to the extent it was necessary, discovery has been completed in *Woodruff I*, while discovery into the fact issues raised

28

in 10cv686 has yet to be conducted.  Thus, consolidation would delay final resolution of *Woodruff I*.  In short, the Court concludes that consolidation is not appropriate in this case, and accordingly both motions (Doc. No. 199 in 09cv449 and Doc. No. 3 in 10cv686) will be denied.

### XIII.  DEFENDANT'S MOTION TO SUSPEND BRIEFING AND FOR SANCTIONS (Doc. No. 142)

The Secretary of State has moved the Court to enter an order suspending all further briefing in the consolidated cases with the exception of Plaintiffs' revised motion for summary judgment on Count V in *Woodruff I*.  As grounds for the motion, the Secretary of State points to the procedural history of this litigation, the copious filings by Plaintiffs, and the resulting waste of judicial resources.  The Secretary of State further requests that the Court enjoin the Plaintiffs from filing any further lawsuits, claims, or motions without first seeking leave of court.

The Court will grant the motion in part.  With the exception of Plaintiffs' motion for summary judgment on Count V in *Woodruff I*, all briefing and motion practice in that case and its member cases is hereby stayed until further notice from the Court.

**IT IS THEREFORE ORDERED** that:

(1)     Plaintiff's Renewed Motion for Summary Judgment on Counts V and VI of Case 1:09-CV-449 (Doc. No. 132) and Plaintiffs' Motion for Leave to File Excess Pages (Doc. No. 134) are both **DENIED**, but the Court grants Plaintiffs leave to refile their motion for summary judgment on Count V provided that they adhere to the limitations set forth herein;

(2)     Defendant's First Motion to Dismiss (filed as Doc. No. 6 in Civ. No. 10-124 JH/KBM) is **GRANTED IN PART** as to Counts II-B, II-C, and V in 10cv124 , which are **DISMISSED**

**WITH PREJUDICE**; the remainder of the motion is **DENIED**;

(3)    Defendants' Motion to Dismiss Case 10cv123 on Res Judicata Grounds (Doc. No. 135) is **DENIED**;

(4)    Plaintiffs' Motions for Ex Parte Preliminary Injunction Re: Count II-E in CIV. NO. 10-123 JH/KBM (Doc. No. 130) and in CIV. NO. 10-124 JH/KBM (Doc. No. 8) are **DENIED**;

(5)    Plaintiffs' Motion for Preliminary Injunction Re: Counts II-A and III (Doc. No. 131) is **GRANTED IN PART and DENIED IN PART**, and the Court will amend its Partial Final Judgment to state that the Secretary must accept either the address as registered or the residential address on all minor party candidate nominating petitions;

(6)    Plaintiffs' Motion for Preliminary and Permanent Injunction Re: Count VIII in 10cv123 (Doc. No. 138) and Plaintiffs' Motion for Summary Judgment on Count VIII (Doc. No. 162) are **DENIED**;

(7)    Plaintiffs' Emergency Motion for ex Parte Injunction and Summary Judgment on Count VI (Doc. No. 160) is **DENIED**;

(8)    Plaintiff Daniel Fenton's Motion to Compel Compliance with Court Order and for Sanctions (Doc. No. 194) and Defendant's Motion for Leave to File Surreply (Doc. No. 197) are **DENIED;**

(9)    Plaintiff's Emergency Motion for Permanent Injunction (Doc. No. 137) is **DENIED AS MOOT**;

(10)    Plaintiffs' Motion for Summary Judgment on Count II-D (Doc. No. 159) is **DENIED**;

(11)    Plaintiffs' Motion for Summary Judgment on Count VII (Doc. No. 161) is **GRANTED**, and declaratory judgment will be entered in their favor;

(12)    Defendants' Motion to Consolidate (Doc. No. 199 in 09cv449 and Doc. No. 3 in 10cv686)

is **DENIED**;

(13)   Defendant's Motion to Suspend Briefing and for Sanctions (Doc. No. 142) is **GRANTED IN PART** as described herein.

_____

**UNITED STATES DISTRICT JUDGE**